# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3243 | **DATE** | 1/8/2002 |
| **CASE TITLE** | KARA FISHER vs. QUALITY HYUNDAI, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Defendant Quality Hyundai's motion to dismiss is denied in part and granted in part. Count VII is dismissed without prejudice. Hyundai Finance's motion to dismiss is denied. Count IX is withdrawn.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 1 1 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 30 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KARA FISHER,

    Plaintiff,

v.

QUALITY HYUNDAI, INC.; HYUNDAI MOTOR FINANCE COMPANY; and GE CAPITAL CORPORATION,

    Defendants.

No. 01 C 3243

Judge John W. Darrah

DOCKETED
JAN 1 1 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kara Fisher (Fisher), filed a multi-count complaint against defendants, Quality Hyundai, Inc. (Quality), Hyundai Motor Finance Company (Hyundai Finance), and GE Capital Corporation (GE Capital). Presently pending before the Court are Quality's and Hyundai Finance's Motions to Dismiss.

In considering a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A reading of Fisher's first amended complaint supports the following summary of the alleged conduct of the parties.

On June 7, 2000, Fisher visited Quality to purchase a vehicle. Prior to her visit, Fisher had been approved for a $10,000 extension of credit through her credit union. At the dealership,

sales representative Rhonda Collins (Collins) assisted Fisher in her purchase. Fisher informed Collins that she was interested in purchasing a vehicle and that she had already obtained financing for the vehicle.

Fisher selected a 2000 Hyundai Accent and was informed that the vehicle would cost $12,000. The $12,000 constituted $500 for Fisher's trade-in allowance, $500 cash to be provided by Fisher, and a $10,000 loan from Fisher's credit union. Collins informed Fisher that although she arranged her own financing, she still had to meet with Quality's Finance Manager, Jim K. When Fisher met with Jim K., she informed him that she had already been approved for a $10,000 auto loan. Jim K. directed Fisher to sign several documents, including a retail installment contract and a used vehicle sales order, explaining that she needed to sign the documents in order to receive the loan check from her credit union. Fisher asked why certain portions of the retail installment contract were completed and indicted finance charges. Jim K. informed her that he had to include such information for her to receive the vehicle on that day. Jim K. explained that once Fisher returned to the dealership with the $10,000 check from her credit union, a new contract would be signed. Jim K. gave the documents to Fisher with instructions to show them to her credit union. Jim K. informed Fisher that she could keep the car for three days upon the purchase of a seven-day insurance binder and that, once she returned with the check from the credit union, her trade-in vehicle, and $500 cash, the deal would be complete. During the transaction, Fisher did not authorize Quality to arrange financing or retrieve a copy of her credit report, and she was not informed that completing any other paperwork would permit such actions.

The next day, Jim K. telephoned Fisher at work and informed her that she could not give

her credit union the documents because he had arranged financing for her through Quality. Fisher told Jim K. that she was not interested in being financed through Quality and reminded him that she already had financing through her credit union.

On June 10, 2000, Fisher decided that she did not want to transact business with Quality because of their actions. Fisher returned to Quality with the car, but the dealership refused to accept the return of the vehicle, stating that the store manager of another dealership had told Jim K. that she had been shopping for a vehicle at his dealership.

Jim K. also told Fisher that because Quality had arranged financing for her, she was obligated to buy the car and finance the purchase through Quality. Jim K. also told Fisher that if she did not take the car, her credit would be ruined and that, when she received the payment book, she needed to make the payments or the vehicle would be repossessed and that her credit would be ruined for seven years.

Fisher informed Jim K. that she still intended to return the vehicle. When Fisher attempted to hand the keys to Collins, Collins moved her hands in an attempt to refuse the keys. Fisher left the keys and the vehicle at the dealership.

On or about June 12, 2000, Jim K. repeatedly telephoned Fisher's work. Some of Fisher's co-workers took the calls and messages from Jim K. Jim K. told one of Fisher's co-workers that, if Fisher knew what was best, she would call him back and that he was not going to let Fisher purchase a vehicle from another dealership. Later that day, Fisher received a call from Collins, who asked where the keys to the vehicle were. Fisher informed Collins that she had left the keys in the vehicle's glove compartment. A few minutes later, Collins telephoned again. When Fisher answered the telephone, Collins passed the telephone to Jim K. Jim K. informed

3

Fisher that she could not purchase another vehicle from a different dealership because he had arranged financing for her and that he would interfere with her attempts to purchase a vehicle from anywhere else. Fisher told Jim K. to stop harassing her at work; to which, Jim K. replied that he had not yet began and that he would call her credit union. Fisher hung up the telephone and phoned her uncle, Freddie Cleveland (Cleveland), for help.

Cleveland went to Quality and asked the general manger to stop Jim K. from repeatedly calling Fisher. He asked what finance company had purportedly been assigned the contract; Quality refused to answer the question.

That same day, Fisher went to her credit union to retrieve a check for a different vehicle. The credit union informed her that Jim K. from Quality had telephoned and stated that the credit union should not issue a check because Fisher had already financed a vehicle through Hyundai Finance.

On June 14, 2000, Fisher received a welcome letter and the first monthly statement from Hyundai Finance. A couple of days later, Fisher wrote to Hyundai Finance, advising it that she had just spoken to one of its customer representatives regarding her alleged account and had explained to the representative that she had never signed a finance agreement. Fisher requested a copy of the document that she purportedly signed; she has not received a response.

On June 19, 2000, Quality placed the vehicle in front of Fisher's house. Fisher telephoned Hyundai Finance and informed it that she had not agreed to a loan with any entity other than her credit union. Fisher did not move the vehicle after Quality parked it in front of her house.

On June 29, 2000, Fisher wrote another letter to Hyundai Finance, revoking any and all

4

wage assignments and asserting her rights under the Illinois Consumer Fraud Act (ICFA). She advised Hyundai Finance that they should retrieve the vehicle and that she was represented by an attorney. On July 7, 2000, the vehicle was "repossessed".

Fisher's attorney, Lance Raphael (Raphael), spoke with Rita Occhiato (Occhiato) at Hyundai Finance and relayed information concerning the disputed vehicle and financing. On August 9, 2000, Hyundai's senior counsel, Elizabeth Patton (Patton), sent Raphael a letter confirming that Hyundai Finance had received a letter from Fisher and that Raphael had spoke with Occhiato. On October 20, 2000, after several telephone conversations with Raphael, Patton informed Raphael that Hyundai Finance would provide notice to credit bureaus that Fisher's account would be noted as disputed. Patton's letter stated that Fisher's remaining obligation on the account after "sale of the repossessed collateral" was $5,652.

In late October 2000, a collection agency began repeated attempts to collect the alleged debt. According to the collection agency, the alleged debt was $7,248.86.

I. Count I - Violation of the Fair Credit Reporting Act

Quality first argues that Fisher's Fair Credit Reporting Act (FCRA) claim, 15 U.S.C. §1681b, should be dismissed because Quality is not a consumer reporting agency. Quality's argument is without merit. The FCRA applies to the actions of consumer reporting agencies and entities or users requesting credit information. *See Pappas v. Calumet City*, 9 F.Supp. 2d 943, 946 (N.D. Ill. 1998) *(Pappas)*; *Wright v. Bogs Mgmt., Inc.*, 2000 WL 1774086 (N.D. Ill. Dec. 1, 2000).

In the alternative, Quality argues that the FCRA claim should be dismissed because it sought Fisher's credit report for an authorized purpose under the Act in which it did not need

Fisher's permission.

Permissible purposes under the FCRA include the use of the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving an extension of credit to that consumer, 15 U.S.C. § 1681b(a)(3)(A), or in connection with a business transaction initiated by the consumer, 15 U.S.C. § 1681b(a)(F)(i). Quality identifies both of these as permissible purposes for its request of Fisher's credit report.

Fisher's complaint alleges that Quality did not have a permissible purpose for requesting a credit report because she informed Quality that she did not want Quality to issue credit because she was already approved for a loan through her credit union. Fisher also alleges that Quality obtained the report under false pretenses for these reasons and that no one at Quality ever informed her that any documents she signed would permit Quality to attempt to finance her purchase or request her credit history.

Fisher sufficiently pleads a cause of action under the FCRA, including that Quality did not have a permissible purpose for requesting the credit report. *See Pappas*, 9 F. Supp. 2d at 946 (consumer may recover damages under the FCRA if the user acquires a consumer credit report under false pretenses).

II. Count II - Violation of the Illinois Consumer Fraud Act, Section 505/2

Quality argues that Fisher's Illinois Consumer Fraud Act (ICFA) claim, 815 ILCS 505/2, should be dismissed because Fisher failed to allege that she relied upon the alleged deception.

Section 505/2 of the ICFA provides, in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise,

> misrepresentation or concealment, suppression or omission of any
> material fact, with intent that others rely upon the concealment,
> suppression or omission of such material fact....

An ICFA claim is liberally construed to effect the purpose of the Act. The Act was intended to afford a broader range of protection than the common law. *Cuculich v. Thomson Consumer Electronics, Inc.*, 317 Ill. App. 3d 709, 716 (2000). As such, the "Illinois courts have repeatedly stressed the 'broad protective philosophy' of this legislation." *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1996) (*Thacker*). Under the ICFA, the plaintiff must generally show that the defendant (1) engaged in a deceptive act or practice, (2) with the intent that a party, including a consumer, rely upon the deception, (3) while engaged in trade or commerce. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970 (7th Cir. 1999) (*Sanfield*), citing *Zekman v. Direct American Marketers, Inc.*, 182 Ill.2d 359 (1998).

Fisher argues that the ICFA requires that "others" rely on the deception and that Quality Finance constitutes an "other". Fisher cites to *Recreation Serv., Inc. v. Odyssey Fun World, Inc.*, 952 F.Supp. 594 (N.D. Ill. 1997) (*Recreation*), in support of her argument. In *Recreation*, the court found that the ICFA requires "others" rely on the deceptive act and that "others" could constitute a party other than the plaintiff. The *Recreation* court found that the plaintiff charged defendant with deceptive conduct aimed at the consuming public through its allegations that the defendant used a confusingly similar mark that could mislead consumers as to the origins of its goods and services and falsely represented that there was a connection between the defendant and plaintiff. Such pleading was sufficient to meet the intent that "others" rely on the deception. *Recreation*, 952 F.Supp. at 597. The ICFA "requires only that defendant intend that 'others' rely

7

on the deceptive practice." *Recreation*, 952 F.Supp. at 597. *Recreation's* holding is consistent with the plain language and "broad protective philosophy" of the Act. *See* 815 ILCS 505/2; *Thacker*, 105 F.3d at 386.

In the instant case, Fisher alleges, in pertinent part, that Quality: (1) "deceptively represented to Hyundai Motor Finance that it had authority to enter into a finance contract for Plaintiff when Plaintiff had never authorized or consented to one"; (2) "Quality arranged Fisher's financing with the intent that Hyundai Motor Finance would rely on its representations"; (3) "Quality Hyundai arranged Fisher's financing with the intent that Fisher would consent to such financing and agree to make regular monthly payments"; and (4) "Quality Hyundai's deceptive arrangement of a finance transaction between Hyundai Motor Finance and Fisher was an unfair and/or deceptive practice".

Like the plaintiff in *Recreation*, Fisher alleges that Quality engaged in deceptive conduct that was aimed at the consuming product. While she alleges deceptive conduct toward Hyundai Finance and reliance by Hyundai Finance, she also alleges that the deceptive conduct took place with the intent that she would consent to a financing agreement that she did not seek and make payments on such agreement. As such, Quality's alleged deceptive conduct was aimed at Fisher, part of the consuming public. Fisher did not need to rely on Quality's deception directed toward Hyundai Finance. Hyundai Finance needed to rely on the deceptive conduct in order for the financing arrangement that Fisher did not seek to take place – if Hyundai Finance did not rely on the deceptive conduct, it would not have agreed to finance the loan and would have never sought payment from Fisher. Fisher has sufficiently pled a cause of action under the ICFA. *See Recreation*, 952 F.Supp. at 597.

III. Count III - Violation of the Illinois Consumer Fraud Act, Section 505/2I

Quality argues that Fisher's ICFA claim pursuant to Section 505/2I should be dismissed because Fisher failed to allege that Quality communicated with Fisher's employer.

Section 505/2I of the ICFA provides, in pertinent part:

> No person may attempt to collect an obligation by communicating in any way with an employer with regard to an obligation owing by one of his employees....

Here, Fisher alleges that Quality contacted her at work and that Quality spoke with several individuals at Fisher's work and informed them that Fisher had an obligation with respect the 2000 Hyundai Accent. Quality argues that such allegations are insufficient because the telephone calls were made in an attempt to communicate with Fisher, and the communications to her "co-workers" were simply to leave messages for Fisher.

Fisher's allegations sufficiently plead a cause of action pursuant to Section 505/2I. Fisher has plead that Quality contacted her employer about the alleged obligation and spoke with individuals about the obligation. Such allegations constitute a communication "in any way with [Fisher's] employer". *See* 815 ILCS 505/2I.

IV. Count IV - Intrusion into Seclusion Claim

Quality first argues that this Court should not recognize the tort of intrusion into the seclusion because the Illinois Supreme Court has not expressly recognized the tort. While the Illinois Supreme Court has not recognized the tort, the majority of Illinois Appellate Courts that have ruled on the issue, including the First District (as cited below) where defendant's business is located, have recognized the tort. *See Johnson v. K Mart Corp*, 311 Ill App. 3d 573, 578 (1st Dist. 2000); *Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1033 (2nd Dist. 1999);

9

*Melvin v. Burling*, 141 Ill. App. 3d 786, 788 (3rd Dist. 1986); *Davis v. Temple*, 284 Ill. App. 3d 983, 994 (5th Dist. 1996). Furthermore, the Seventh Circuit and other district courts have predicted that the Illinois Supreme Court would recognize such a claim. *See e.g., Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) (*Thomas*); *Acuff v. IBP, Inc.*, 77 F. Supp. 2d 914, 921 (N.D. Ill. 1999); *Amati v. City of Woodstock*, 829 F. Supp. 2d 998, 1009 (N.D. Ill. 1993); *Miles v. LaSalle Fin. Serv., Inc.*, 1995 WL 599053 (N.D.Ill. Oct. 5, 1995). The cases cited within are persuasive. Accordingly, Fisher's intrusion into seclusion claim is not dismissed on this ground.

Alternatively, Quality argues that Fisher's allegations do not constitute an unauthorized intrusion into Fisher's seclusion.

In order to establish a claim for intrusion into the seclusion of another, the plaintiff must allege: (1) an unauthorized intrusion or prying into the plaintiff's seclusion, (2) the intrusion must be offensive or objectionable to a reasonable person, (3) the matter upon which the intrusion occurs must be private, and (4) the intrusion causes anguish and suffering. *See Lovgren v. Citizens First Nat'l Bank*, 126 Ill.2d 411, 417-18 (1989) (*Lovgren*). The nature of the tort is dependent on some type of highly offensive prying into the physical boundaries or affairs of another; its basis is not publication or publicity. *Lovgreen*, 126 Ill. 2d at 416-17.

In her complaint, Fisher alleges that Quality committed the tort by pulling her credit report without authorization, speaking with family members regarding the automobile, calling her workplace and speaking with various employees, contacting her credit union concerning the automobile, fraudulently arranging financing, and threatening and harassing her both in person and over the telephone. Some of these allegations fail to support a claim for intrusion into seclusion. These include speaking with family members regarding the automobile, contacting

her credit union, and speaking with co-employees. *See Lovgren*, 126 Ill. 2d at 417 (a plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion); *Mlynek v. Household Fin. Corp.*, 2000 WL 1310666 (N.D.Ill. Sept. 13, 2000) (contact initiated by plaintiff not unauthorized intrusion). However, Fisher's claim of threats and harassment both in person and over the telephone support her claim. *See Thomas*, 998 F.2d at 452 (repeated and unwanted telephone calls can constitute intrusion into seclusion). Accordingly, Fisher has sufficiently pled an unauthorized intrusion into seclusion claim.

V. Count V - Violation of the Illinois Consumer Fraud Act For Invasion of Privacy

Quality argues that Fisher fails to state a claim under the ICFA.

As stated above, under the ICFA, Fisher must generally show that Quality (1) engaged in a deceptive act or practice, (2) with the intent that Fisher rely upon the deception, (3) while engaged in trade or commerce. *See Sanfield,* 168 F.3d at 970.

In Count V, Fisher alleges that Quality violated the ICFA by pulling her credit report without authorization, speaking with family members and falsely representing that she was obligated under a contract, calling her workplace about the contract, contacting her credit union, fraudulently arranging financing, and threatening and harassing her. She further alleges that Quality engaged in this conduct with the intent that she would rely on these representations in that she was obligated to Hyundai and Hyundai Finance and would keep the automobile. These allegations sufficiently allege a cause of action under the ICFA.

V. Count VI - Common Law Fraud in the Inducement

Quality argues that Fisher failed to allege Count VI with proper specificity as required by Federal Rule of Civil Procedure 9(b).

11

Federal Rule of Civil Procedure 9(b) requires plaintiff plead the circumstances constituting fraud with particularity. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (*DiLeo*).

A review of Count VI and the preceding paragraphs incorporated into the count demonstrate that Fisher has sufficiently pled the who, what, when, where, and how of the alleged fraud.

V. Count VII - Defamation *Per Se*

Hyundai Finance argues that Fisher's defamation *per se* claim should be dismissed because its actions do not constitute defamation *per se*.

Statements are defamatory *per se* when the defamatory character of the statements are apparent on their face. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 10 (1992) (*Kolegas*). In other words, the words used must be so obviously and materially harmful to the plaintiff that an injury to her reputation may be presumed. *Kolegas*, 154 Ill. 2d at 10. Illinois courts have recognized four categories of statements that are considered defamatory *per se*: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties or office or employment; and (4) words that prejudice a party, or impute his lack of ability, in his trade, profession, or business. *Kolegas*, 154 Ill. 2d at 10. Statements charging perjury and fornication or adultery are also actionable pursuant to Illinois law. *See* 740 ILCS 145 *et seq.*.

Illinois courts and the legislature have not recognized statements concerning an

individual's credit reputation to be defamation *per se*, and such statements do not fall within the above categories. Accordingly, Fisher's defamation *per se* must be dismissed.

Fisher argues, in the alternative, that she has stated a cause of action of defamation *per quod*. However, Fisher's complaint specifically identifies her claim as defamation *per se*, and she cannot amend her complaint via her response to the motion to dismiss. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

V. Count VIII - Violation of the Illinois Consumer Fraud Act

Hyundai Finance argues, as did Quality, that Fisher's ICFA claim should be dismissed because the alleged deceptive act took place based on statements made to a credit reporting agency; therefore, plaintiff could not have relied upon such deception. Fisher repeats her argument that the ICFA only requires that "others" rely on the deceptive act.

In her complaint, Fisher alleges that Hyundai Finance engaged in deceptive conduct by knowingly reporting false information to a credit reporting agency with the intent that she would rely on such misrepresentations and fulfill any alleged obligations to Hyundai Finance. As found above in relation to the same argument by Quality, Fisher has sufficiently pled an ICFA claim. Hyundai Finance's actions were allegedly made for Fisher, part of the consuming public, to rely on such misrepresentations and make payments to Hyundai Finance. These allegations are sufficient to state a cause of action.

IX. Count IX - Violation of the Equal Credit Opportunity Act

In her response, Fisher withdraws Count IX.

For the reasons stated above, defendant Quality Hyundai's Motion to Dismiss is denied in

part and granted in part. Count VII is dismissed without prejudice. Hyundai Finance's Motion to Dismiss is denied. Count IX is withdrawn.

Dated: 1/8/02

JOHN W. DARRAH
United States District Judge